(41 South. 555.)

No. 15,957.

FOREMAN v. EAGLE RICE MILL CO., Limited.

(June 18, 1906. Rehearing Denied June 28, 1906.)

1. MASTER AND SERVANT — INJURY TO SERVANT.

The servant may, to some extent, trust to the knowledge and care of the master.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 547–549, 675–677.]

2. SAME—SAFE PLACE TO WORK.

The master must provide a safe place for the workman.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 171, 178, 179.]

3. SAME—PROTECTING MACHINERY.

A machine that can easily and cheaply be cased in, and that is dangerous without casing, should be incased. It was a matter of a dollar or two to inclose a dangerous shaft in an exposed place.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 193, 203, 229.]

4. SAME—FAILURE TO WARN SERVANT.

The servant was employed, and a few hours afterward met with the accident which was the cause of his death. He had not been warned by the master.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 314.]

5. SAME.

The other employés at similar work carried strings tied around their waists necessary in sewing bags. The sewing up of the bags was part of plaintiff's work.

6. SAME.

The strings were caught by the revolving shaft, and the defendant was hurled against tne wall.

7. SAME—EVIDENCE.

It appearing that the accident might have been avoided by incasing the shaft, the master is held liable.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Pierrepont Edwards, Judge.

Action by Mrs. Eulalie Foreman, tutrix, against the Eagle Rice Mill Company, Limited. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

Hampden Story and T. M. & J. D. Miller, for appellant. Medlenka & Taylor, for appellee.

BREAUX, C. J. Plaintiff, grandmother and tutrix of the minor, Ellen Foreman, daughter of the late Charles B. Foreman and Emma, his wife, both deceased, brought this suit for damages in the sum of $10,000.

The suit was tried by jury, which found a verdict in favor of plaintiff for $2,000.

Foreman, the deceased, was a young man 22 years of age, employed at defendant's mill at $9 a week.

Plaintiff alleged, in substance, that at the

time of the employment of her son by the defendant corporation he had scarcely any experience as a laborer in a rice mill. That he was assigned to work on the first floor, filling sacks with rice bran, and sweeping the floor. That he had twine tied around his waist. That there was no pin, peg or hook on the wall or on any post in the mill for holding the twine needed in sewing up the rice sacks. That he was not warned of the danger in thus carrying twine. That, about a half hour after he had been employed, the twine around his waist, drawn by the vacuum created by a revolving shaft, caught it, wrapped it around, and drew the deceased to it, nearly cutting him in two. That it caused him severe injury and great pain. He died as a result about three days after the accident.

The shaft in question was vertical. It extended from the lower to the upper floor, and on the upper floor it revolved the brush. Plaintiff alleges that the shaft or spindle was negligently exposed; that it was unsmooth, sticky with oil, and that besides it should not have been exposed, but that it should have been incased.

Defendant, while admitting that Foreman died from the effects of the injuries received, avers that it was the result of his own negligence and imprudence. He denies all liability.

The deceased at the moment of the accident, that is, about 10 o'clock in the day, was holding a broom and sweeping the floor. He was between the shaft and the wall of the room, but nearer the shaft than he was to the wall.

The evidence shows that those who sewed up sacks, as did the deceased, carried twine around their waists in order to have it ready for use in sewing up the rice bags. It was used as thread is used in sewing cloth.

The floor which the deceased had to sweep could not very well be swept without the deceased getting near the shaft. At the moment of the accident he was standing with his back to the shaft; that is, when the twine was caught by the shaft and he was injured as before mentioned.

There was, it seems, near the shaft, a bin and a shaker and a chaff grinder, one near the other. Two posts served to support the shaft.

We mention these facts to show that there was not much space around the shaft.

There can be no question but that the shaft while revolving very fast—its usual speed—was dangerous.

Workmen too frequently are unmindful of the danger to which they are exposed. They become indifferent, although they should constantly bear in mind that the slightest touch of the machinery may be attended with fatal result.

Negligence is the main ground set up on the part of the defendant.

It is true that one of the fellow workmen of the deceased warned him of the danger of carrying twine around his waist. This warning was given about 15 minutes before the accident, a warning which deceased did not heed. Had it been given by the master, it would doubtless have had greater effect.

The millwright in charge of the mill testified that he, at the time, gave no warning to the young man of the danger. He did ask him if he had worked in any other mill, to which question the young laborer replied in the affirmative; but that was about all. There was no reference made regarding the extent of the young man's experience in fact, nothing was said other than as before stated.

One point we construe entirely in favor of plaintiff.

It is not necessary, nor will it serve any purpose, to go over all the grounds. Before taking up the grounds for decision, we will state that the defendant kept a record of the causes of accidents. We excerpt the following in this case:

"Injured partly engaged in sewing sacks, and strings used by him, as in the case with all sack sewers, were fastened to his waist, and in some unaccountable way the same became entangled with a perpendicular revolving shaft and before extricating himself he was thrown against the wall and injured."

This was written by the bookkeeper.

As relates to facts, we will again state that he carried the twine around his waist as did others while at work; that the shaft was oily, and to it the twine was attracted. Now, as to the law: The place in which the work is done should be suitable and the machine and appliances safe. All the authorities agree in this respect.

Here the appliance was not safe and suitable. The shaft in question should have been incased, and then there would have been no danger. It was a small matter. The cost for incasing the shaft would have been a dollar or two. The defendant did incase the shaft after the accident and thereby emphasized its necessity. It was too late to save the life of the young man.

The danger was not latent, for every master must be held to know that a fast rolling shaft in proximity to workmen is dangerous. Everything reasonable should be done toward avoiding accident. If a shaft is exposed, the master should warn the servant of the danger. Moreover, it should be kept as clean as possible.. If possible, without great labor and expense, it should be incased.

If there was danger in thus carrying the cords to sew up the sacks, the master through his vice principal was aware of it and should have given warning against it. There must be some vigilance exercised by both master and servant.

Where it is evident, however, that by some slight repair the piece of machinery in an exposed place can be covered, the master cannot claim the credit of having been mindful of the responsibility in which he is placed of showing some care for those who are under his direction.

There are reciprocal duties; the servant to render intelligent and faithful work, and the master, on the other hand, reasonably to see that his servant is not exposed.

There are machines that cannot well be inclosed. They must, in the nature of the work, be left exposed, but there are other machines which can be inclosed at small expense. The shaft in question is of the latter kind.

There was want of timely attention in not having inclosed it. The danger of accident should to a reasonable extent be minimized.

Moreover, the servant may to some extent trust to the superior knowledge of the master. Carter v. Dubach Lumber Co., 113 La. 242, 36 South. 952. Moreover, it can hardly be said that the deceased was sufficiently warned or notified of the danger at the time that he was employed.

We shall have to increase the amount of the judgment from $2,000 to $3,000, as we think the first amount stated is too low. The young man left a young child, besides greatly suffered before dying. True, his wages were limited. None the less, the amount of damages in our view should be increased. It would serve no purpose to set forth all the details which induce us to increase the amount. We are confident that on the authority of other decisions the amount is not excessive.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is amended by increasing the amount from $2,000 to $3,000, and, as amended, the judgment is affirmed.