BREAUX, C. J.
The controversy relates to the succession of Adelaide Landry,. late wife of Louis Delcambre.
We have had different phases of the cause before us in several appeals. In the last appeal decided by us, the court decreed null , and void the letters of administration which had been issued to Louis Delcambre, administrator in the succession of Adelaide Landry. The case was remanded, and, in accordance with the court’s decree, application for the administration was advertised and an inventory was made of the property..
The opponents- to the appointment of Dominique Miguez, to wit, Louis Delcambre and his two sons, Desire and Laodice Delcambre, filed opposition to the application on the ground that the appointment was not necessary by reason of the fact that the succession owes no debts, and that there is no necessity for making an appointment, as it is now needful to make a partition of the property and in that way to close the settlement of the succession.
Louis Delcambre, ousted as 'administrator, to the end of sustaining his position in opposition to the demand of his grandson, Dominique Miguez, offered to him and to bis other children and grandchildren to enter into a compromise with them.
The written proposal of compromise is lengthy. We will state the substance of this offer of compromise. It is a statement of facts. Some of the facts are material in deciding the issues before us.
Delcambre, in the first part of the document, stated that he had good cause „to believe (as we have no doubt was the case) that he had been regularly appointed and confirmed as administrator of the succession, and that he has every reason to believe that originally all the papers were in the record. He then states that he in good faith obtained an order for the sale of the movables and the plantation at Petite Anse; that he used part of the proceeds of the sale in discharging debts of the succession, and that one-half of the balance belonged to him, and the remainder he held as usufructuary; that the tableau of debts shows the disposition he made of the funds; that the inventory shows that the movables were appraised at $3,133.50; that these movables were sold for the price of $3,721.85, for - which account he is prepared to settle if his proposal be accepted. It appears that there was furniture which he says was not included in the sale. This was of small value. He further states that the immovable property was inventoried at $11,000 and adjudicated to Desire -Delcambre, but that, as afterward Desire Delcambre, the purchaser, could not pay the price, he conveyed the property to him. It is sufficient to state *1065 that the property passed to Coguenheim and from Coguenheim back to Louis Deleambre. He then goes into the details.
Some time afterward he sold this property at a private sale to Desire Deleambre for $11,500, and states that Desire sold one-half of the property to Laodice, his son. 1-Ie asserts that Laodice and Desire, owners, have since put improvements on the property to the extent of several thousand dollars. Louis Deleambre further states that he does not think that the sale can be annulled; that he had the right to sell one-half of the property, but that, as his children and grandchildren are entitled to one-half of the community of the property after payment of the debts, as shown by the account, and subject to his usufruct, he proposes to end the litigation by an immediate settlement without the cost of an administration; that this is feasible at this time, whilst perhaps it was not when he applied for the administration, as there were .debts to be paid and there were minor heirs; that as the debts have been paid, except a small amount due the heirs, and all the minor heirs have become of age, he proposes a partition of all the property belonging to the estate and an accounting between himself and his children and grandchildren. What may remain after taking the account will belong, one-half to him and one-half to the heirs. He states that he is entitled to the usufruct of the community property and particularly entitled to it in view of the fact that he is in his eighty-second year (this was in December, 1904), and needs the revenues in his extreme old age to protect him against want and suffering. He expresses a willingness to -invest the funds subject to the usufruct in such a manner as the- heirs may desire and the court order, or to receive nothing but an income. He then states that, in order that there may be no impediment to an immediate settlement, and while Desire and Laodice Deleambre insist that they have a good and valid title, the latter offered to return to the succession of their mother the one-half of the property to which her heirs were entitled before the succession sale, to be again sold, with the entire property, subject to their right, as we understand, to one-half of the proceeds. 1-Ie further states that the estate was benefited; that the improvements on the property offered to be returned might be appraised by experts selected on both sides and sold with the property; that the appraised value would go to Desire and Laodice Deleambre out of the proceeds of the sale. Further he states to these heirs that, if they would agree to refund to Laodice and Desire Deleambre $11,500, plus improvements on said property, by them paid out of the proceeds of the sale of the plantation, or from any other proceeds that they please, and assure him that they will consent to a cancellation of the sale in full. He is ready to account upon the partition of the property. The proposal is made without waiver of any right.
The offer was agreed to by Laodice and Desire Deleambre, the two sons; but it was refused by the other heirs.
The proposed compromise not having been accepted, Desire Deleambre renewed his opposition on a number of grounds, namely, that a partition of the property should be made subject to the rights of his father to the usufruct; that further costs and delays should be avoided. 1-Ie asked the court to pass upon the question of the proposed compromise, or at any rate that it be considered by the court. He asked that the demand of Dominique Miguez to be appointed administrator be denied, and, in the alternative, if an administrator be deemed necessary, he asks for the appointment, instead of Dominique Miguez.
An intervention was filed by the heirs other than those before named. They accepted the succession, with benefit of inventory. They averred that on account of the debts due the *1067 succession, the debts due by it, and the simulated sale to Desire Delcambre, an administration should be ordered and Desire Delcambre appointed. They charged that Louis Delcambre had not properly administered the affairs of the succession. They even charge that the father of some of the heirs and grandfather of the others has committed fraud to despoil the estate.
The judge of the district court sustained the demand of Dominique Miguez and appointed him administrator.
Properly enough, the surviving husband, Louis Delcambre, seeks to defend his acts. The opposing heirs, on the other hand, asked that the appointment heretofore made be affirmed by this court, and urged that an administrator be appointed to call upon Louis Delcambre, who acted heretofore as administrator, for a full and complete account of his gestión while acting as administrator. The heirs seek to lay bare all his acts while acting as administrator.
We have seen that there are serious charges, heretofore stated by us in general terms. To go for a moment into details:
One of the charges is that Louis Delcambre combined with the creditor, or alleged creditor, of the succession, or of Louis Delcambre, personally, and that in accordance with the combination caused title of property to pass out of the estate of the late Mrs. Landry into the name of the asserted creditor. Another charge is that he omitted to carry notes due to the community just dissolved by the death of his wife on the inventory of the community, and allowed property to be sold that the heirs would not have allowed to be sold, if they had known of these notes and if they had been carried on the inventory. Another of these charges is that Louis Delcambre acted in concert with his son, Desire Delcambre, and illegally disposed of property of the community.
This property, it appears, was offered at public auction at the succession sale of Adelaide Landry. The property was bought by the son, who did not pay for it. It was transferred by the son to a third person, and that third person subsequently conveyed it to Louis Delcambre. This is the property which the sons, Desire and Laodice, offered to return to the community, and which is mentioned in the inventory as property they would return if the compromise were accepted.
Another charge is that his acts as administrator were not in full accordance with the good faith required of an administrator.
The dissatisfied heirs press upon our attention many details regarding the gestión of Louis Delcambre. They date many years back. We merely refer to these charges in passing. They may have to be considered in other proceedings. It is quite evident that, if these heirs do not moderate their opposition to the former administration of the aged survivor of the community, each of the details will have to be considered, and the issues raised in regard to them will have to be decided. The issues cannot very well be decided at this time and in these proceedings. For that reason we will not dwell upon that phase of the case, and will confine ourselves to determine whether or not, without considering all the grounds of fraud alleged, it is proper and in accordance with our jurisprudence to appoint an administrator to finally settle the affairs of the succession and of the community.
We will observe, in the first place, that the matter of an appointment of an administrator is scarcely an open question at this time, for this court expressly held in Migues v. Delcambre, 113 La. 61, 36 South. 888, that an administrator is necessary for the payment of the debts and for the purpose of settling accounts with the surviving husband and of inquiring into the validity of the sale of the land made as before mentioned.
This decision concludes Louis Delcambre *1069 and Desire and Laodice Delcambre, at any rate to the date that the decision was ren dered. All issues connected with the settle ment of the estate of a prior date, in so far as relates to the appointment of an administrator, are now settled. We can only consider those which have been raised since the decision was rendered.
The situation in matter of the succession Is substantially the same as it was when the issues were before us in other appeals. Consistency requires us to adhere to the views previously expressed.
Among other things we said:
“How far the acts of the administrator de •facto may be valid as to the heirs _and^ third persons may not be considered at this time.” Migues v. Delcambre, 113 La. 63, 36 South. 888.
The cause was remanded to appoint an administrator.
There must be an accounting, and that accounting' may as well be with the administrator.
The proposal of compromise invoked by appellant has not resulted in anything, and would not justify us, it not having been accepted, in setting aside the judgment of the district court.
The judge of the first instance is vested with large discretion in matter of the appointment of an administrator. Even if the heirs were inclined to accept the compromise, it would require more good will than they have heretofore shown to carry out its terms. 'They refuse to accept it, and we are thereby constrained to decline to consider it as ground ■sufficient for declining to affirm the judgment and ordering a partition to be made at once.
All the heirs, except the appellants, favor the appointment. That in itself has been taken heretofore in several cases as ground sufficient to sustain on.appeal the judgment appointing an administrator.
Learned counsel cite Succession of Graves, 50 La. Ann. 436, 23 South. 738, in support of -their contention that the demand for the appointment of an administrator should be rejected and a partition ordered.
The main features in that decision differ from the present case, as will be seen by the following, to wit:
“The district judge was of the opinion that there were no debts or credits rendering it proper to appoint an administrator.”
Here it is different. There are claims against the succession, as well as claims urged in its favor.
Again, in the cited case, supra, the court approvingly cited from Brashear v. Conner, 29 La. Ann. 349, as follows:
“The heirs may stop an administration and provoke a partition among the coheirs at any Seme if there are no debts.”
That is the contested point here, and the dispute among the heirs is of such a character and scope that the court deems it advisable to let the appointment stand, in order that all matters may be determined contradictorily with the succession.
Even according to appellants, there is a small amount due to the succession by the .survivor in community. This, they allege, they have offered to pay, and have made a tender. The appellees deny the averment, and the record does not satisfactorily make, it appear who is accurate in this respect.
We leave this branch of the ease with citation supporting the proposition that it does not appear that the district court exceeded its discretion. Romero, Succession of, 42 La. Ann. 896, 8 South. 632; Theriot, Succession of, 116 La. 25, 40 South. 519; Chaler, Succession of, 39 La. Ann. 308, 1 South. 820.
As between the applicants for-the administration — that is, between Desire Delcambre and Dominique Miguez — the preference in view of possible conflicting interest between Delcambre and Miguez was properly given to Miguez.
This brings us to the usufruct claimed by the surviving husband.
The judgment appealed from rejects this *1071 claim. The contention of tlie appellees is that the right has been extinguished by mismanagement of Louis Delcambre, survivor in community.
We do not propose to decide that question at this time. It can be postponed until all the other questions involved shall have been settled. If a satisfactory settlement be made, and a good and sufficient showing, then it may be that it will appear that the survivor in community is entitled to the usufruct. In the meantime the claim will have to remain in abeyance; that is, the claim, provided it has no't been extinguished by reasons urged by appellees. We are quite convinced that the right cannot be asserted to prevent the liquidation of the succession. Romero, Succession of, 42 La. Ann. 896, 8 South. 632.
Leaving this right, whatever it is, in this situation, will not prevent a settlement.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is afr firmed in all respects, except as relates to the demand of Louis Delcambre, surviving partner in community, to be recognized as usufructuary of property belonging to heirs of Adelaide Landry, and coming from the shares of the community. His demand, if there is anything in it, shall remain in abeyance until after the liquidation and settlement of the succession. The appellees to pay the cost of the appeal.