MARCUS, Justice.
Lucas Marcello, Jr. owned and operated Delta Bail Bonding Company, a/k/a Delta Bonding Agency, and in 1970 entered into a sub-agent’s contract and indemnity agreement with Gerald J. Hebert, d/b/a Hebert’s General Bonding, Inc. (Hebert). That contract required that the sub-agent (Delta Bonding Agency) pay all fines, fees and expenses incurred to prevent a final judgment of forfeiture of any and all bonds it executed. After Marcello’s death on January 6, 1988, Hebert allegedly incurred $3,013.91 in expenses on behalf of Delta Bonding Agency in connection with this agreement. Marcello’s only child, Bernadette Marcello Brugier, refused to reimburse Hebert for those expenses, and on May 18, 1989, Hebert instituted this personal action against Mrs. Brugier in the Second Parish Court for the Parish of Jefferson.
Over three months prior to Hebert’s filing suit, Mrs. Brugier filed a petition for possession of her father’s estate in the Twenty-fifth Judicial District Court for the Parish of Plaquemines. In her petition she accepted the succession of her father unconditionally and without administration. She filed a descriptive list in which she listed the value of Delta Bonding Agency as $775.40. The total net value of the estate was listed as $38,793.12. On February 9, 1989, a judgment of possession recognized Mrs. Brugier as decedent’s sole heir, who was entitled to the “ownership and possession of all of the property left by the decedent.”
After answering Hebert’s suit, Mrs. Bru-gier filed an exception of lack of subject matter jurisdiction, claiming that this suit was a succession matter, over which only the district court, and not the parish court, had jurisdiction. The trial judge overruled the exception.[1] After trial on the merits, judgment was rendered in favor of Hebert and against Mrs. Brugier in the amount of $2,442.91, plus interest from date of judicial demand until paid, and all costs. Both parties appealed. Without reaching the merits, the court of appeal annulled the judgment and dismissed the case.[2] Based on its interpretation of La.R.S. 9:1421, the court concluded that the parish court did not have subject matter jurisdiction because this was a succession matter. On Hebert’s application to this court, we granted certiorari to review the correctness of that decision.[3]
The sole issue for our determination is whether La.R.S. 9:1421 mandates that a suit arising out of a decedent’s debt or obligation, which is filed against a “successor” (heir or legatee) who has executed an inventory or descriptive list and who has accepted an estate unconditionally, is a succession proceeding over which a district court has exclusive original jurisdiction.[4]
*840 In 1986, the Louisiana Legislature adopted Act 602, codified as La.R.S. 9:1421, which provides as follows:
Notwithstanding any provision in the law to the contrary, including but not limited to Civil Code Articles 976 through 1013 and Civil Code Articles 1415 through 1466, every successor is presumed and is deemed to have accepted a succession under benefit of inventory even though the acceptance is unconditional, and where an inventory or descriptive list has been executed. In such case, every heir or legatee, whether particular or under universal title, shall not in any manner become personally liable for any debt or obligation of the decedent or his estate, except to the extent and value or amount of his inheritance; however, any such heir or legatee may, in the petition for possession or by a separate instrument in writing, personally obligate himself for any or all of such debts or obligations.
Prior to the adoption of La.R.S. 9:1421,[5] an heir could either renounce a succession, unconditionally accept the succession, or accept with benefit of inventory. La.Civ. Code arts. 977, 1032. An unconditional acceptance resulted in the heir’s obtaining immediate possession of the succession property but at the cost of becoming personally liable for the debts of the succession. La.Civ.Code arts. 1013, 1056, 1423, 1426-1428. The judgment of possession terminated the succession, and any subsequent suit on an obligation of the decedent was a suit against the heir. Kelley v. Kelley, 198 La. 338, 3 So.2d 641, 646 (1941); Succession of Thibodeaux, 38 La.Ann. 716, 717 (1886); Danos v. Waterford Oil Co., 225 So.2d 708, 713 (La.App. 1st Cir.1969); La.Civ.Code arts. 1422, 1426-1428; La. Code Civ.P. art. 3001, official revision comment (c).
The code of civil procedure provides for two circumstances in which a closed succession can be reopened.[6] Articles 3007 and 3008 allow the reopening of a succession after the judgment of possession if, within three months after the judgment of possession, a creditor has demanded security and that security has not been provided. See also La.Code Civ.P. art. 3034. Hebert, the creditor, did not demand security, and thus these provisions do not provide a vehicle for reopening the succession. Article 3393 allows for the reopening of a succession if other property is discovered or for “any other proper cause.” It has been held that a belated claim by an alleged creditor is not a proper cause for reopening a succession. Succession of Yancovich, 289 So.2d 855, 858 (La.App. 4th Cir.1974); Molero v. Bass, 190 So.2d 141, 147 (La.App. 4th Cir.1966). Hebert’s claim would not have constituted proper cause for reopening Lucas Marcello’s succession.
Thus, this succession was closed, and any suit by a creditor to collect a debt of decedent must be brought directly against Mrs. Brugier (the sole heir), unless in Act 602 the legislature intended by its use of the term “under benefit of inventory” to require that every succession be administered if an inventory or descriptive list was executed.[7] If the statute requires such an administration, then a suit to col *841 lect decedent’s debt would constitute a succession proceeding, and the district court would have exclusive original jurisdiction. La.Const. art. 5, § 16(A). There is nothing in the statute that implies such a broad result. Act 602 did not amend the code of civil procedure either to create a new mechanism for reopening a succession or to require an administration. Nor does the use of the term, “benefit of inventory,” in the act mandate an administration.
The term “benefit of inventory” is defined in the civil code:
The benefit of inventory is the privilege, which the heir obtains, of being liable for the charges and debts of the succession only to the value of the effects of the succession, by causing an inventory of these effects to be made within the time and in the manner hereinafter prescribed.
La.Civ.Code art. 1032.
By definition “benefit of inventory” is a limitation of liability. Under most circumstances, acceptance with benefit of inventory mandates that the succession be administered. La.Civ.Code arts. 1032-1068. However, this is not always the case. By operation of law, a minor accepts a succession with benefit of inventory. La.Civ. Code art. 977. The code of civil procedure, however, allows for minor heirs in an intestate succession to be put into possession without an administration on the ex parte petition of their legal representative or the surviving spouse in community if no creditor of the succession has demanded its administration. La.Code Civ.P. art. 3004 and official revision comment (b); see also La.Code Civ.P. art. 3031. Article 1047 of the civil code requires that an administrator be appointed if some heirs accept with benefit of inventory and others accept unconditionally. Prior to the adoption of the present code of civil procedure, we held that the decision to require an administration, even though some heirs had accepted with benefit of inventory, was within the discretion of the trial judge. Succession of Comeau, 158 La. 370, 104 So. 119, 121 (1925); Succession of Story, 3 La.Ann. 502, 504 (1848).[8] Hence, Act 602 creates another exception to the general rule.
When Mrs. Brugier unconditionally accepted and was sent into possession of her father’s estate, the succession was closed and could not be reopened. Act 602 did not change the law either by directly creating a new procedural basis for opening a succession or by implicitly requiring an administration by its use of the term, “benefit of inventory.” Thus, this was not a succession proceeding, and Hebert’s suit was properly filed in the parish court.
Act 602 states that every “successor” is presumed and deemed to have accepted under benefit of inventory even though the acceptance was unconditional if an inventory or descriptive list has been executed. This act limits the personal liability of an heir or legatee to the “extent and value or amount of his inheritance.” It simply creates a defense, which an heir or legatee can raise.
In the instant case, Mrs. Brugier was the sole heir, who accepted her father’s succession unconditionally and without administration. The descriptive list which she executed showed the net value of the estate to be $38,793.12. Hebert’s demand is for $3,013.91 plus judicial interest and costs. It is incumbent upon Mrs. Brugier to prove that the amount demanded by Hebert, together with debts of decedent which she has already paid, exceed the value of her inheritance. This defense can be raised in the parish court proceedings.
Because this is the first decision interpreting Act 602, it is understandable that Mrs. Brugier did not raise this defense in the trial court. Therefore, we consider it appropriate to remand the case to the parish court for a new trial. La.Code Civ.P. art. 2164.
*842 DECREE
For the reasons assigned, the judgment of the court of appeal dismissing the claim of Gerald J. Hebert, d/b/a Hebert’s General Bonding, Inc., is reversed. Bernadette Marcello Brugier’s exception of lack of subject matter jurisdiction is overruled. The case is remanded to the parish court for further proceedings in accordance with this opinion. Assessment of costs should await final disposition of this matter.
ON APPLICATION FOR REHEARING

. Mrs. Brugier also filed exceptions of no right of action and no cause of action, which were overruled.

. 571 So.2d 900 (La.App. 5th Cir.1990).

. 577 So.2d 5 (La.1991).

.Article 5, § 16(A) of the Louisiana Constitution provides in part:
Original Jurisdiction. (1) Except as otherwise authorized by this constitution, ... a district court shall have original jurisdiction of all civil and criminal matters. (2) It shall have exclusive original jurisdiction ... of cases involving ... probate and succession matters_
*840 La.R.S. 13:1444 limits the jurisdiction of parish courts and provides that a parish court has no jurisdiction in a succession proceeding.

. For a general discussion of La.R.S. 9:1421, see Cavanaugh, Problems in the Law of Succession: Creditors' Rights, 48 La.L.Rev. 1099 (1988); Spaht, Developments in the Law: Successions, 47 La.L.Rev. 471, 479-84 (1986).

. Articles 2002 and 2004 of the code of civil procedure also provide a mechanism by which the judgment granting possession may be annulled.

. Although the act is entitled "relative to the administration of successions," this title does not reflect a legislative intent to require the administration of all successions. Some successions are both administered and accepted unconditionally, and the title acknowledges that fact. Article 3, § 15 of the Louisiana Constitution requires that “[ejvery bill shall contain a brief title indicative of its object,” but it does not require that the title provide an index or complete description of the act’s contents. Lafayette Parish School Bd. v. Market Leasing Co., 440 So.2d 81, 87 (La.1983); Bazley v. Tortorich, 397 So.2d 475, 486 (La.1981). Thus, the title does not mandate or imply that Act 602 requires that all successions be administered.

. At the time these cases were decided, the applicable provision in the Code of Practice was article 976, which provided in pertinent part:
During the time allowed for making the inventory and for deliberating, the judge shall appoint an administrator to retain the property, if any of the creditors of the succession shall require it....